**HAYS v WARNER**

Ohio Appeals, 2nd Dist Franklin Co

No 2616. Decided March 28, 1936

F. S. Monnett, Columbus, for plaintiff in error.

John W. Bricker, Attorney General, Columbus, for defendant in error.

Paul L. Selby, Special Counsel, Columbus, for defendant in error.

## OPINION

By BARNES, PJ.

This cause is now being determined on proceedings in error from the judgment of the Court of Common Pleas of Franklin County, Ohio.

The parties appear in this court in the same order as in the trial court.

On November 5, 1930, the plaintiff, Ottie E. Hays, deposited in the Columbian Building and Loan Association, at Columbus, Ohio, the sum of $2000.00, and as evidence of said deposit received a certificate of deposit, dated November 5, 1930, in the amount of $2000.00, bearing interest at the rate of 6% per annum, and by express provisions issued subject to the constitution and by-laws of the company.

On April 1, 1931, Ottie E. Hays wrote a letter to the Columbian Building and Loan Association, stating therein that she would probably want to withdraw her money the first of May, 1931.

On April 2, 1931, the Columbian Building and Loan Company answered said letter, stating in substance that a check would be mailed to plaintiff for the amount of her deposit upon the surrender of the certificate of deposit properly endorsed.

On May 4, 1931, the loan company mailed to Miss Hays semi-annual interest payment and about the same time, possibly in the same envelope containing dividend check, enclosed to the plaintiff a printed circular containing, in glowing and persuasive terms, the advantages of having or making investments with the Columbian Building and Loan Company.

On the 6th of May plaintiff wrote another letter to the Columbian Building and Loan Company, in which she stated that her brother had received more money from the sale of his hogs than he had expected and, therefore, it would not be necessary to withdraw the funds as previously indicated.

On May 18, 1931, the Columbian, by action of the Board of Directors, went on notice and thereafter notice of withdrawal was demanded before paying deposit or certificate accounts. Previous to this date all withdrawal demands were met and paid immediately. The loan company continued on notice until March 25, 1933 at which time the defendant, Paul A. Warner, the then qualified and acting superintendent of the building and loan associations of Ohio, took possession of all of the business, property and assets of the Columbian for liquidation, pursuant to the provisions of §687, et seq, GC. This action was taken by and with the consent and approval of Honorable Theodore H. Tangeman, the then Director of Commerce of the State of Ohio, and since that date the said superintendent and his successor in office have been continuously in charge of the liquidation of said company.

On or about January 14, 1933, and before the present defendant, as superintendent, had taken over possession of the business and so forth of the Columbian for liquidation, the plaintiff filed her action in the Court of Common Pleas of Franklin County, Ohio, against the Columbian Building and Loan Company, seeking to have her deposit declared to be a trust fund and held by the Columbian as a trustee, and, further, that she be declared a preferred claimant on the assets in the hands of the loan company. The petition also contained an alternative prayer that she have judgment for her damages in the sum of $2000.00 and interest.

The Columbian, on or about February 23, 1933, filed answer and thereby issues were joined, but the cause did not come for hearing and trial prior to the date the Columbian was taken over by the Superintendent for liquidation.

On or about August 25, 1933, the plaintiff, following the procedure outlined in §§687-5, et seq, GC, presented her claim to the superintendent, requesting an allowance of preference as to her certificate account, which request was denied by the superintendent, but an allowance was made as a general claim, entitled to share with other general creditors in the liquidation of the company. Thereafter the present action was filed in the Court of Common Pleas of Franklin County, Ohio, and was finally determined in August, 1935. The trial court, Honorable Robert P. Duncan presiding, found against the claim of the plaintiff and dismissed her petition.

Counsel for plaintiff in the petition in error set out nine separate specificatons of error, but we shall not attempt to follow these in their language or in order. There

seems to be some unwarranted confusion as to the scope and character of the finding and judgment of the trial court.

This is due largely to the very informal manner in which the case was presented in the lower court. The bill of exceptions is composed of trial statements, agreed facts, exhibits presented by stipulation and no sworn testimony. Apparently, neither side was desirous of presenting anything further, and we so conclude from the fact that the bill of exceptions, at page 17, contains the following:

"And thereupon the plaintiff rested."
"And thereupon the defendant rested."

While we do find in the record that counsel for defendant orally demurred to the petition and requested judgment on the trial statement of plaintiff's counsel and other like motions and demurrers during the progress of the hearing, yet the entry clearly discloses that the court determined the case upon the pleadings and the evidence. It also appears that the hearing was on May 13, 1935, whereas the cause was not determined until September, 1935, and thereby we know that the case was taken under advisement.

There are two major questions for determination:

1. Did the trial court have jurisdiction to make determination in this cause while a prior action was pending, brought by the plaintiff against the Columbian before it was taken over by the superintendent?
2. Is the judgment and finding supported by the evidence and the law?

Considering the first question we have no difficulty in concluding that the trial court did have jurisdiction to determine the cause, notwithstanding the fact that another case was pending wherein similar relief was demanded. We base our conclusions primarily on the fact that the plaintiff herself invoked the jurisdiction of the superintendent of building and loans when she followed the procedure outlined under the Code and presented her certificate account to the defendant for allowance as a preferred claim. Upon the same being allowed as a general claim but disallowed as a preferred claim, plaintiff again followed the provisions of the Code by bringing her action in the Common Pleas Court to have such determination of the superintendent set aside.

The rule of law is well recognized that a litigant may not invoke the jurisdiction of the court and at the same time deny such jurisdiction.

Had plaintiff desired to test out the question now presented, it should have been done in the first action wherein supplementary petition should have been filed, making the superintendent of building and loans a party. In the present action the plaintiff has had the advantage of submitting every question that might have been submitted in the first action, and hence the question is now res adjudicata, unless reversed on review.

Litigants will not be permitted in one proceeding to conduct an experiment on all issuable questions and then, after an adverse decision, take up the same questions anew in some other action.

The alternative plea of the plaintiff in the petition in this case is sufficient to invoke the complete jurisdiction on all issuable questions, and hence this ground of error must be determined against the contention of the plaintiff in error.

Passing now to the second ground of error, we find ourselves in accord with the conclusions of the lower court, as shown by the written opinion attached to the original papers.

We arrive at this conclusion on two principal grounds:

First, that we, as a reviewing court, should not disturb the finding of fact of the trial court that the plaintiff continued her account with the Building and Loan Company by reason of the fact set out in her letter, dated May 6, 1931, marked Defendant's Exhibit A. This letter in substance states that due to the fact that her brother received more money for his hogs than he expected, she would not need the money as indicated by a prior letter, but would be able to leave it with the company. No reference in this letter is made to the glamorous circular presented in evidence as Plaintiff's Exhibit No. 1. It is the claim of plaintiff that the circular in question was the persuasive reason for leaving the account with the building and loan instead of withdrawing it as she had previously intended to do. Her letter of May 6 does not so state. By denials in the answer this question is made issuable under the pleadings and hence becomes a question of fact for the determination of the trial court, if material. On the question of fact we woud not be warranted in making a contrary finding.

As a second ground for sustaining the finding and judgment of the trial court,

we are inclined to the view that regardless of the motivating cause for continuing the deposit, no trust relation would be created, however false or fraudulent might be the circular marked Plaintiff's Exhibit No. 1.

This conclusion is arrived at on the uncontradicted state of the record.

By this we mean that on November 5, 1930, at the time the plaintiff, then, as now, a resident of Fayette County, made her deposit of $2000.00 and received therefor an interest bearing certificate, the condition of creditor and debtor arose and no evidence is presented from which a resultant trust might be implied from conditions then existing. There is presented no evidence from which the insolvency of the Columbian might be inferred as of that date. Approximately six months later the plaintiff might have cashed her certificate except for the fact that she withdrew her request previously made.

We do not understand that counsel for the plaintiff makes the claim that a resultant trust arose as of the date of the original deposit and obtaining the certificate. The claim is made and stressed that the fraudulent representations made in the circular, Plaintiff's Exhibit No. 1, was the persuading element that caused her to leave the money with the Columbian and not withdraw it. We have already stated that this is an issuable fact upon which the court has found against the plaintiff, and therefore will not be disturbed by us, but even if, for the moment, we concede all that is claimed by plaintiff, yet there is not presented such a situation as would create a resultant trust.

A constructive or resultant trust does not arise by agreement of the parties. In the case of Newton v Taylor, 32 Oh St, 399, Judge Wright, speaking for the court, uses the following language:

"Perhaps the matter in question is not, strictly speaking, a trust at all, but a ground of relief based on fraud."

In the case of Seese v Seese, 116 Oh St, 144, at page 158, Chief Justice Marshall makes the following statement:
"In such a case equity becomes the artificial conscience of the malefactor."

In cases such as the instant case we must not lose sight of the fact that primarily the general creditors are the beneficiaries of the fund, and the powers of the chan-

cellor should not be exercised to the detriment of such general creditors. If the Columbian is now insolvent, which seems to be conceded, the order of preference would take from the general creditors and would not operate against the Columbian Building and Loan Association as an entity. This fact alone in a proper case will not prevent a finding of preference where the state of facts and rules of equity require. We think the Supreme Court in the case of Orme v Baker, 74 Oh St, 337, has announced the rule which we can safely follow. The fact that Judge Davis dissented, together with the very lengthy opinion, shows the difficulty attending the promulgating of the rule there announced. In this reported case above cited the deposit of money and checks was on the last day the bank was open for business and but a few minutes before the close of banking hours. The agent of the bank then in charge received the deposit and entered the same on the pass book of the depositor to his credit, but did not enter the credit on the books of the bank. It is stated that an examination of the condition of the bank at any time within thirty days before it closed would have disclosed its insolvency. Two days before the deposit was made the cashier and vice president clandestinely absconded, leaving in charge a bookkeeper and assistant cashier. The officer receiving the deposit knew it was insolvent when such deposit was made. Under this state of facts the following announcement is made in the last paragraph of the syllabus:

"1. That under these circumstances, the knowledge of the cashier as to its hopeless insolvency should be imputed to the bank.
2. The deposit having been fraudulently received, no title thereto vested in the bank, and on making timely demand upon the receiver for its return, the depositor is entitled to recover of him its full amount in preference over the claim of general creditors."

The last paragraph in the opinion, on page 358, reads as follows:
"But in rendering this judgment, we are not laying down general rules to be applied indiscriminately, but wish to limit our decision and its scope to the facts of this case, on which alone it is authority."

We also call attention to the opinion at page 346. While this is dictum, it so correctly announces the law as we understand it that we desire to quote it in full:

"Ordinarily the relation between a general depositor and the bank is that of debtor and creditor and that relation, when allowed to stand, will not authorize or permit such depositor to obtain a preference over other general creditors in case the bank was insolvent when the deposit was made. Mere insolvency does not furnish a ground for a rescission of the transaction, but in order to prevent the title to the deposit vesting in the bank, fraud must be shown in its reception sufficient to entitle the depositor to repudiate the deposit and reclaim the same."

The reason and justness of the rule is obvious. The receiving of the deposit on the last day that the bank was open and near the close of the day, and where, at the time, it was known that such bank was hopelessly insolvent, and was known so to be by the officer receiving the deposit, a willful fraud was perpetrated on the depositor of such a character that a chancellor would protect against the attending results of such fraud. This deposit fraudulently procured would improperly enrich other creditors to the amount of such deposit. The equities are so clearly discernible and so easily separated that the Supreme Court felt warranted in holding in favor of the depositor, although the eminent justice writing the opinion felt constrained to say that the rule was limited in its scope to the facts of that case and should not be adopted as a rule to be applied indiscriminately.

We know of no principle of law which will permit a depositor in a bank or a building and loan association to have his deposit declared to be a preference over general creditors, where the condition of debtor and creditor has existed unquestioned for a period of six months. The mere fact that a depositor, after a period of six months, continues the relation of debtor and creditor on the faith of ██ misleading and untruthful circulars sent out by the association to its patrons will not have the effect of changing the relation of debtor and creditor to that of a preferred claimant. The mere mental processes of a depositor, undisclosed to the debtor after a continuous, uninterrupted relation of debtor and creditor for six months, may not be considered as having any probative force in creating a preferred claim.

We find no prejudicial error in the record, therefore the judgment of the trial court will be affirmed and cost adjudged against plaintiff.

Exceptions will be allowed to plaintiff.

HORNBECK and BODEY, JJ, concur.